WELLS, &c.
*vs*
PORTER, &c.

---

CHANCERY.

## Wells, &c. *vs* Porter, &c.

ERROR TO THE FLEMING CIRCUIT.

Case 95.

*Vendor and vendee. Assignor and assignee. Liens.*

June 9.

CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated.

On the 16th of October, 1839, Jeremiah Wells purchased, by executory contract, a tract of 310 acres of land, of John N. Proctor, for $35 an acre, one third of the purchase money to be paid in 60 days, one third in 12 months, and the residue in two years, and Wells was to be let into the possession on the 1st of March following, and Proctor to convey the same by deed of special warranty. The note for the last instalment of $3,616 66 cents, was assigned by Proctor to Porter, on the 15th of August, 1840, with an agreement, that if the note should not be punctually paid by Wells at maturity, Proctor should pay twenty per cent. interest thereafter,

on the amount until paid. After the maturity of the note, Wells was anxious for further delay, and accordingly, on the 31st of January, 1842, by the mutual agreement of all the parties, Wells took up the old note, and executed a new note to Proctor for $1,401 77 cents, payable 12 months after date, which was assigned by Proctor to Porter, and specified on its face that it was for the last instalment of the land purchased by Wells; and at the same time, as part of the agreement between the parties for time, Wells executed an instrument of writing to Porter, which, after reciting the note, and that it was given for the last instalment of the land purchased, and that there was some difficulty in Proctor's making a title for about 19 acres of the land, stipulates as follows: "Now, for the consideration of ten dollars, which I have received from said Porter, I hereby agree and bind myself to said Porter, that I *never will enter any plea, or in any way attempt to defeat the collection of the said note by him.*"

This note not having been paid at maturity, Porter filed his bill on the 2d of February, 1843, to subject the land to its payment. Wells answers, setting up a defect of *title* to a part of the land, and an inability on the part of Proctor to convey, and charges that there was usury in the note of twenty per cent. per annum, makes his answer a cross bill, and seeks a rescission of the contract for the land, and prays that the land may be sold to pay what he had advanced on the purchase, to-wit, the two first instalments, and that he be allowed priority of lien over Proctor.

In the mean time, Henry and Peter Lee filed a bill, setting out that they held a note on Jeremiah Wells and John N. and Thomas Proctor, for $3,181 73 cents, upon which they had sued at law; that Wells was in possession, and held the equitable title, by purchase from Proctor, of said 310 acres of land; that the defendants were in laboring circumstances, and would dispose of the land, and defeat the recovery of their debt, and pray for and obtain an attachment, under the statute of 1838. This suit was afterwards consolidated with the suit of Porter, and an amended bill filed, asserting a prior lien to

that of Porter, upon the allegation that their note had been given as a part consideration of the land.

It appears that the Lees held a note upon Proctor, and a mortgage upon the land to secure it, and had released the mortgage, and surrendered the note to Proctor, in part payment of the consideration due from Wells to Proctor, for the land, and had taken the note in question, from Wells, with John N. and Thomas Proctor as his sureties, in consideration thereof, except as to the amount of $600 93 cents, with interest, embraced in the note to the Lees, which was Proctor's debt, and exceeded to that extent, the amount due from Wells to Proctor, and assumed to be paid by Wells to the Lees, as a part of the consideration for the land. Afterwards, judgment was recovered at law, upon the note, and executions returned no property found, and exhibited in the record by the Lees.

*Decree of the Circuit Court.*

The Circuit Court determined, that as between Wells and Proctor, the former had an unquestionable right to rescind, but as to the Lees and Porter, he had precluded himself from the right to do so, so far as their liens might be affected thereby. The prior lien is given to Porter for the amount found due him, and after purging the usury embraced in the note, the amount found due him, as estimated by the Chancellor, including legal interest, is $3,900 76 cents, on the 31st January, 1843. The land is decreed to be sold, and Porter first to be paid out of the proceeds, and the residue, if any, paid to the Lees, to the extent of their debt. The contract, as between Proctor and Wells, is dissolved, and the cause reserved for the settlement of their respective rights and liabilities, as upon that rescission.

By consent of parties, Wells has brought the case to this Court, and Proctor and the Lees have assigned cross errors.

*An executory contract of sale of 310 acres of land, vendee is entitled to have a rescision, vendor being unable to convey 60 acres of the land sold, including the*

As between Proctor and Wells only, the latter has shown an unquestionable right to rescind the contract. An entire inability on the part of Proctor to convey, by any sort of title, about 60 acres of the land, embracing the dwelling house, out houses, spring, and most valuable improvements, which must have constituted a prominent inducement to the purchase, is shown, and in part admit-

ted by Proctor in his answer. But as to the Lees and Porter, it is insisted that Wells has no right to rescind, so as to affect their liens.

Wells has made no contract with the Lees, by which he is restricted in his equitable right to rescind. Nor have the Lees any *original* lien upon the land, to secure the payment of their demand, as a part of the unpaid consideration. The consideration of Wells' note to them, was the surrender of the note which they held upon Proctor, and was not the purchase of the land. It is true, that the surrender of Proctor's note paid so much of Wells' debt to Proctor for the land, and the Lees became the creditors of Wells for the amount so paid, and having paid it, and Wells still being indebted to them for the amount of his debt so paid, they might perhaps be substituted in the place of Proctor, to his lien upon the land against Wells. But this lien is only derivative, springing from their right to stand in the place of Proctor, and can confer on them no greater right to resist a rescission, as the means of preserving their lien, than Proctor would be entitled to. As Proctor, if the consideration was unpaid to him, would have no right, on that ground, to resist a rescission, so the Lees having the right only to be placed in his stead, would have no more right than he. So if the contract be rescinded, as Wells would have a right to recover back from Proctor the amount of the consideration paid, and to hold a lien upon the land to enforce its re-payment, as the Lees paid for Wells a portion of that amount, and took his and Proctor's note for its repayment to them, they would have a right to be substituted in the place of Wells, as the creditor of Proctor, upon a rescission, to Wells' lien upon the land for the amount so paid by the Lees. But this lien is also derivative, and accrues only under and by reason of their equitable right to be subrogated to an amount of Wells' lien equal to the amount of Wells' debt, which they paid. And Wells being their debtor for the amount as between the Lees and Wells, they may be entitled to a priority of lien over Wells, and the more especially will they be entitled to be first paid before any amount is paid to Wells, upon a dissolution, as judgment at law has been recovered

WELLS, &c.
*vs*
PORTER, &c.

dwelling house, spring, out houses and valuable improvements, constituting a prominent inducement to the purchase.

WELLS, &c.
*vs*
PORTER. &c.

against Wells and his sureties on the Lees note, and a return of no property found, as to all. But the Lees having no more right to resist a rescission than Proctor has, and no right except that which is derived under and through Wells to rescind, or ask an enforcement of a lien to secure the restitution of their money advanced to Proctor, if Wells has precluded himself from the right to rescind as against Porter, or to enforce his lien upon the land for the restitution of the purchase money paid prior to Porter's lien, and the payment of his demand, the Lees, whose equity is merely derivative, will also be postponed to Porter. The question, therefore, remains to be settled, has Wells, by his transaction and agreement with Porter, debarred himself of the equitable as well as legal right to resist the payment of Porter's note, or the enforcement of his lien to secure its payment?

A purchaser seeking a rescission of a contract of purchase of a tract of land, having paid a portion of the price and induced a third person to take his note for a part of the price unpaid, upon obtaining a rescission, will be postponed in his lien upon the land to the third person who holds his note, and who is also a party seeking to enforce his lien, and he will be postponed to a judgment creditor, of him the vendee, who has filed his bill to subject his equitable interest to the payment of his demand.

It is perfectly obvious that Porter, in the arrangement which he made with Wells and Proctor for forbearance, not only looked to the personal responsibility of Wells as principal and Proctor as endorser, but also looked to the lien which he held upon the land, to secure the payment of the note. Hence he expresses on the face of the renewed note, that it was given for *land purchased* by Wells from Proctor, and the note is executed by Wells to Proctor, the *vendor*, and assigned by him to Porter. Hence also, the recital in the bond given by Wells to Porter, that the note was given for the last *instalment* of the *land* sold by Proctor to Wells, and the further recital that there was some difficulty in said Proctor's *making a deed* for about 19 acres of the land. The direct and unequivocal covenant to Porter on the part of Wells, that he will *never enter any plea*, or in any way attempt to *defeat the collection of said note* by Porter, must therefore, be understood not only as a covenant and agreement not to make or attempt any defence at law, but also as a covenant and express undertaking not to resist the enforcement of Porter's lien upon the land, in the *collection* of the debt or the *coercion* of its payment, in that or any other form of proceeding. It is equally obvious that the forbearance for twelve months granted by Porter, as well as the ten dollars acknowledged to have been received by

Wells, (the payment and receipt of which is not controverted in the pleadings or proof, if it could successfully be impeached, without the allegation of fraud or mistake, or a shift to evade the statute of usury,) was the *inducement and consideration* of the execution of the renewed note, as well as the execution of the bond on the part of Wells, not to set up any defence against the note. The forbearance would not have been given except upon the terms and in consideration of the execution of both instruments, in the form prescribed; and the execution of both instruments superinduced and was the consideration upon which the delay was granted; and forbearance has ever been held a good and valid consideration to sustain any contract *that* is not otherwise illegal. The object and purpose of the arrangement was to secure Porter in the payment of the money due him, after the expiration of the time given, against any contingency that might happen or controversy that might spring up between Proctor and Wells in relation to the original consideration; and being founded upon a good and valid consideration, should be construed to have the same effect in the accomplishment of the object and purpose intended, as if the old note had been surrendered, and with it Porter's recourse against Proctor, and a new note executed by Wells, directly to Porter, with the grant of a lien upon the land to secure its payment, or, as if Porter had been induced to part with his money, in the purchase of the original note, upon the guarranty of its validity by Wells, and his covenant to set up no defence, legal or equitable, against its payment.

The consideration of forbearance is as valid and binding as the consideration in either of the cases put. Loss on the one side or a risk of loss, or a benefit on the other, is a good consideration. Wells not only obtained a benefit by the time afforded him to make payment, but Porter sustained a loss by being kept out of his money for the time given, and was exposed to the entire loss of his recourse upon Proctor for the original sum advanced, by his failure in the mean time, and to the entire loss of his whole demand, by the failure of both Wells and Proctor. And indeed, but for the lien secured on the land by the stipulation against setting up any defence, he would lose

A vendee executing his note to a third person for a part of the land purchased, is estopped to resist the payment on account of defect of title, where he obtains indulgence, and the lien is not waived.

his entire debt, as from the returns on the executions in favor of the Lees against both of them, of "no propeity found," made on the 10th February, 1844, it appears that they both have failed, and his personal remedy against them is entirely lost. And this return of the officer is the first evidence we have in the record, of their failure. It does not appear, therefore, that if Porter had not granted the time, but had been allowed to proceed upon the original note assigned, that he might not have made or secured his debt, either out of Wells or Proctor. And if so, the forbearance has operated as a loss of his entire debt, if Wells shall be permitted to escape from his covenant.

But it is contended that Wells was ignorant of the extent of the failure of title or of Proctor's inability to convey, and in ignorance of his rights, was deceived and deluded into the arrangement and covenant to Porter. If he was deluded and deceived as to the ability of Proctor to convey, he was not deluded or deceived by the act or misconduct of Porter, and he should not be made to bear the loss. Wells, trusting to Proctor for a title, executed an unconditional covenant to Porter, not to set up any defence against the note, and upon that undertaking has obtained the indulgence which he asked; if either are to lose, Wells who trusted most, should lose. His covenant is in the nature of a direct warranty of title, in which the warrantor takes upon himself the risk and responsibility. It may well be doubted, therefore, whether any ignorance on Wells' part, as to the extent of the failure of title, or any deceit practised upon him by Proctor, as to the title, will enable him to escape from his direct and unconditional covenant to Porter. Suppose, instead of the covenant, which we have shown was intended to secure the lien as well as personal responsibility, that Wells, in consideration of the forbearance and ten dollars paid, had executed a mortgage to Porter upon his equity in the land, warranting the same, could he defeat the lien to Porter and deprive him of his debt, upon the allegation of ignorance as to the extent of Proctor's inability to convey? He surely could not. He might, in that case, rescind as between himself and Proctor, but

could not rescind so as to deprive Porter of his lien, in the security of his debt. So in this case, it would seem, that he ought not to be allowed to rescind so as to deprive Porter of his lien intended to be secured to him by the arrangement made. Though Porter might have known that Proctor was unable to convey as to a portion of the land, that might be a good reason for his refusal of forbearance upon other terms, than that Wells should take upon himself the risk and responsibility of paying the note without defence. But waiving the foregoing view, we would remark that the evidence tends strongly to show that Wells was fully apprised of the character of Proctor's title, in every essential particular, and of the steps necessary to be taken by him to perfect the same. Or if he was not fully apprised of it before the arrangement was made with Porter, he was furnished with the means of ascertaining all about it before he executed the covenant to Porter, and it was his duty to inquire and inform himself before he undertook absolutely to pay Porter. It is certain that he did know that the title to a portion of the land, and that which in part embraces the improvements, was in the infant heirs of Thomas, and was to be acquired by petition and *sale*, under a *decree* of a Court of Chancery, for this was talked of on the day of the renewal of the note and execution of the covenant to Porter. And if to be sold, he must have known that it must be purchased and paid for by Proctor before he could make a tile. He also knew that the title to another parcel embracing the improvements, was in the widow of Thomas, and he most likely knew that it had not been paid for, and if he did not, he had the means in his power to ascertain it, and upon the exercise of the slightest diligence, on inquiry of his brother-in-law, Proctor, or Mrs. Thomas, he might have ascertained it. He was also apprised of the condition of the title to that portion of the land derived from Larkin Sandage. The defect of title to these three parcels of land forms the entire ground upon which Wells asks a rescission.

It is also contended that the note was renewed and covenant executed to secure a most oppressive and unconscientious exaction of usury, for forbearance, and should

Bonds, conveyances, &c. intended to secure greater rate

WELLS, &c.
*sa*
PORTER, &c.

of interest than
6 per cent. &c.
are void for the
excess over 6
per cent. per an-
num, but bind-
ing to that ex-
tent.

not, therefore, be enforced. They were both made, not only to secure the usury, but also to secure the principal and legal interest. And our statute of 1819, (2 *Stat. Laws*, 856,) declares "all bonds, contracts, covenants, conveyances, or assurances, made for the payment or delivery of any money or goods lent, when a higher rate of interest than six per cent. per annum is reserved, void, *only so far as relates to the usurious interest,*" but entitles the lender or person forbearing, to recover the principal loaned with lawful interest thereon. Though the note and covenant assuring the payment, are both unquestionably void and inoperative so far as they attempt to secure the payment of the usury, or so much of the 20 per cent. reserved, as exceeds the legal rate of interest, and cannot be enforced either at law or in equity; yet they are both binding and obligatory so far as they secure the principal and legal interest, in either tribunal; and we do not feel authorized, on the ground of the excessive usurious exaction, to go beyond the remedial provisions of the statute, there being no evidence of fraud, duress, or unjustifiable oppression on the part of Porter. But we think there is error in the record to the prejudice of both Wells and Proctor, as well as the Lees, (all of whom are interested in the reduction of Porter's lien,) in the amount decreed to be paid on the note, preliminary to an enforcement of the lien. Fifty two dollars was assumed by Proctor and afterwards paid and credited on the note on the day of its execution. Though this payment was made by Proctor in discharge of five per cent. of the usury exacted and embraced in the note, it was paid on the note and should be applied as a payment of so much of the principal and legal interest, as has been frequently determined by this Court. And though paid by Proctor and not by Wells, this can make no difference. It went to extinguish so much of the demand which Porter had a legal right to demand on the note, and should be deducted from the amount decreed by the Circuit Court to be paid to Porter, preparatory to an enforcement of his lien upon the land.

And as the case must be reversed for this error and the cause returned for further proceedings, we would suggest

the propriety of permitting Proctor's answer and cross bill to be filed, charging usury against Porter, which was rejected by the Circuit Court on the ground that it was offered too late.

The usury, *as charged*, is made to run into and increase the amount of Porter's demand, and consequently to increase the amount for which he seeks the enforcement of his lien on the land. Not only Proctor, who is chargeable with negligence in failing to set up this matter at an earlier stage of the cause, is interested in reducing the amount of Porter's demand, but Wells and the Lees are also interested as the holders of junior incumbrances upon the land, to reduce the amount of Porter's lien to an amount that is justly due. To the extent that his demand has been swelled by usury exacted from either Wells or Proctor, he should not be allowed to enforce his lien. And as usury should ever be looked upon as odious by the Chancellor, and the borrower as the oppressed party, acting under the constraint of his necessities, and which may continue even during the progress of the case, to enforce the usury, a liberal practice should be indulged and a ready ear lent by the Chancellor, to the admission of pleadings, which may enable the oppressed party to arrest the illegal exaction before it is reduced to the form of a judgment or decree.

We would further suggest that the Chancellor, in the enforcement of liens, is not bound by the replevin laws applicable to legal proceedings, or the time limited for the replevin or the sale of property under execution, when no replevin has been taken. But when, as in the case before us, the property to be sold consists of a large tract of land of great value, and may not be susceptible of a division and sale to advantage, and when also there are, as in this case, other creditors and junior incumbrancers interested in the proceeds, we have no doubt that the Chancellor has the right, and it is his duty to order a sale upon a longer credit than is required by the law in sales under execution; and that he may, and it is proper that he should, when the condition of the estate to be sold, and the interest of the parties require it, order a sale for instalments, to be paid at reasonable intervals apart, so

*The Chancellor is not bound to conform to the rules and practice of the common law courts, in selling on 3 months credit; but may, in his discretion, extend the credit and sell for payments in instalments, so as to benefit both debtor and creditor.*

as to prevent a sacrifice and subserve the substantial ends of justice. He is not bound to enforce a lien at the instance and upon the complaint of an incumbrancer, upon such terms as must sacrifice the rights of others, or of the debtor. We would also remark, that as only a portion of the note executed by Wells as the principal, to the Lees, constituted the consideration of his purchase of the land, as paid by the Lees to Proctor, this matter as well as the credit to which Proctor is entitled for the amount ordered to be credited on the Lees' demand, by the decree of the Mason Circuit Court, be taken into the estimate in the settlement of the respective rights of the parties.

The decree of the Circuit Court is reversed, and cause remanded, that the $52 paid by Proctor and credited on the note of Wells, may be deducted from the amount decreed in favor of Porter, and further proceedings had, not inconsistent with this opinion; and each party is to pay his own costs in this Court, on the errors and cross errors assigned.

*Hord, Robertson and Chord* for plaintiffs: *McClung &amp; Taylor, Beatty, Payne, and Morehead &amp; Reed* for defendants.